**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| OLADAYO ADE OLADOKUN | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v | * | Civil Action No.  DKC-14-463 |
| | * | |
| STATE OF MARYLAND | * | |
| CALVERT COUNTY | * | |
| MIKE EVANS, Sheriff, Calvert County | * | |
|   Detention Center | * | |
| | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM OPINION**

Oladayo Ade Oladokun is suing Calvert County and Mike Evans, Sheriff of Calvert County, pursuant to 42 U.S.C. § 1983. (ECF No. 1).[1]  Defendants, by their counsel, filed a Motion to Dismiss for Failure to State a Claim, or Alternatively, Motion for Summary Judgment. (ECF No. 13).  Plaintiff has filed an opposition (ECF No. 15) to which Defendants replied. (ECF No. 16). After considering the filings, the court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2014).

**I.    Plaintiff's Allegations**

Plaintiff's claims arise from the time he was a pre-trial detainee and later an inmate serving a state imposed sentence[2] at the Calvert County Detention Center (Detention Center).[3] He alleges that beginning in November 4, 2013, he was subjected to cruel and unusual punishment by Defendants, who placed him "on the cell floor in booking that can only housed

---

[1]    The State of Maryland and the Calvert County Detention Center were dismissed as Defendants from this case on March 3, 2014.  (ECF No. 5).

[2]    http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=04K13000561&loc=63&detailLoc=K

[3]    On September 16, 2014, Plaintiff notified the Clerk of his new address in Washington, D.C. (ECF No. 17).

[sic] two inmates, then place [sic] plaintiff in K-unit without any heat at all during the whole winter season." (ECF No. 3, Part III). Plaintiff claims he went without a medical exam for eye glasses, was exposed to unhealthy living conditions, and Defendant Evans failed to properly care for him. *Id.* Plaintiff claims his body ached from placement in a cell with temperatures below freezing. (ECF No. 3 at 4). Additionally, Plaintiff faults Defendants for failing to provide proper medical testing for tuberculosis and other infectious diseases while he was housed with other inmates, contends there was mold in the showers and on his dinner rolls, and asserts the charges for phone calls were excessive. He also complains he was denied access to a "proper legal standing library" and has been unable to order books or newspapers from "well known established publications like Amazon or *USA Today.*" ECF No. 3 at 3; ECF No. 12. As relief, Plaintiff sought punitive damages of $500.000, as well as injunctive [4] and declaratory relief.

Plaintiff avers he attempted to raise his concerns through the prison grievance process. (ECF No. 1, p. 1). He maintains that on several occasions he "turned in the in house [sic] grievance or request form" on the issues that are now before this court. (ECF No. 15, p. 8). He states the grievances or request forms were submitted to the "officer's [sic] in the bubble in the housing unit." (ECF No. 1, p. 14).[5]

---

[4] The court takes notice that Plaintiff has been transferred from the Detention Center. *See Supra* n. 2. To the extent he seeks declaratory and injunctive relief, his conditions and medical claims have been rendered moot. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir.2009) (stating that "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there").

[5] With his opposition, Plaintiff filed an affidavit executed by inmate Earl Washington, Jr., who declares that he spent "some of his time in a housing unit with Plaintiff" where it was "freezing cold" and extra blankets were provided to prisoners. (ECF No. 15, Ex. 1). Washington attests to seeing mold in the showers and flies in the facility. He states there has been hair in his food and inmates have been placed on floor cells. Washington does not attest to having first-hand knowledge of Plaintiff's experiences in the facility, nor does Washington attest to witnessing Plaintiff filing complaints or grievances concerning these matters. Plaintiff has also filed an affidavit from inmate Tony Chase, who states that he has seen flies and black mold in his housing unit. *Id.* Chase makes no mention of any personal observation of Plaintiff's prison experiences.

Mindful that Plaintiff is self-represented, the court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pleadings filed by a pro se litigant are held "to less stringent standards than formal pleadings drafted by lawyers").[6] Against this background, the court treats Plaintiff's claims as arising under the First and Fourteenth Amendments.[7]

## II. Respondents' Exhibits

Defendants have filed an affidavit and verified copies of Plaintiff's prison and medical files. The records show that Plaintiff was brought to the Calvert County Detention Center after his arrest on November 14, 2013. (ECF No. 13, pp.4-7; Ex. 1).

### A. Plaintiff's Administrative Grievances

During his confinement, Plaintiff presented some fifty-seven pages of requests and complaints to detention center staff (ECF No. 13, pp. 7-12; ECF No. 13, Ex. 2, pp. 1-57). None concerned matters specifically at issue in this § 1983 proceeding, with the exception of a grievance concerning moldy dinner rolls and bug infestation. The grievances included:

November 17, 2013, Plaintiff requested a Bible.

November 21, 2013, Plaintiff requested copies of the Maryland Criminal Law and Motor Vehicle Handbook. He was told he could view the pages as often as he liked, but copies were not made for inmates at the Detention Center.

December 15, 2013 Plaintiff requested to see the psychological counselor about mental health concerns. His request was allowed. (ECF No. 13, Ex. 2 at 43).

---

[6] To the extent Plaintiff attempts to attack state criminal charges pending against him, he may not do so in this proceeding. *See Younger v. Harris*, 401 U.S. 37, 53–54 (1971); *Cinema Blue of Charlotte, Inc., v. Gilchrist*, 887 F.2d 49, 50–53 (4th Cir. 1989) (absent extraordinary circumstances district courts should abstain from constitutional challenges to state judicial proceedings if the federal claims have been or could have been presented in an ongoing state judicial proceeding).

[7] Due to his pre-trial detainee status (ECF No. 13, pp.4-7), Plaintiff's claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See Hill v. Nicodemus*, 979 F.2d 987, 990–92 (4th Cir. 1992). As a practical matter, the Fourth Circuit does not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's civil rights claim. *Id*.

<u>April 3, 2014</u>  Plaintiff filed a complaint against "the medical department of [the] mental health division" for failure to provide a court ordered evaluation.  He was informed that the delay was at the State level, not within the Detention Center. (ECF No. 13, Ex. 2, p. 38).

<u>April 22, 2014</u> Plaintiff requested a "legal call" to his attorney.  He was informed that a call was impossible because he had been placed in segregation due to a disciplinary infraction.  He was told to write the attorney instead. (ECF No. 13, Ex. 2, p 33).

<u>May 6, 2014</u>  Plaintiff complained about the size of the food portions served in L Block.  The complaint was forwarded by staff to administration and a formal written response was issued by Captain C.B. Cross, Deputy Director, on May 15. 2014.  The response established that there was no difference in the portion size or caloric value between the L Block and general population trays.  Plaintiff had made no complaint to any medical staff member about feeling undernourished. (ECF No. 13, Ex. 2 pp. 20-22).

<u>May 9, 2014</u> Plaintiff complained of unsanitary conditions in his housing unit. He stated that he had seen small worms and black flies in the shower and black flies in the day room.  He stated the bugs crawled into his nose and ears while he slept.  Staff notified maintenance of the complaint and referred the matter to the Deputy Administrator for resolution. (ECF No. 13, Ex. 2, p. 30).  On May 14, 2014, Captain K.B. Cross, the Deputy Administrator, responded.  The written resolution established the actions taken by the Detention Center beginning in 2009 and still ongoing. (Exhibit 2 at 23-24).  These actions included three documented self-initiated visits by the Calvert County Health Department to ensure sanitary living conditions, as well as an increase in visits by pest control services due to the warmer weather. (ECF No. 13, Ex. 2, pp. 23-24).

<u>May 27, 2014</u> Captain K.B. Cross, Deputy Administrator, formally responded to Plaintiff's May 27, 2014 complaint of mold on a bread roll.  Instead of replacing his entire tray of food as Plaintiff requested, two new rolls were given to him. Plaintiff refused to eat the new rolls and, instead requested that his entire meal tray be replaced.  A supervisor came to the location and advised him that the bread exchange was the only option. (Ex. 2, p. 11).

**B.     Sheriff Evans' Affidavit**

Defendants have also filed an affidavit executed by Evans. (ECF No. 13, Ex. 5).  Evans attests:  1) he "had no personal contact or interaction with Mr. Oladokun during his incarceration," *Id*. at 4;  2) the Detention Center "has a comprehensive legal library" (ECF No.

13, Ex. 5, p. 2); and 3) "[m]edical, dental, and mental health matters involving clinical judgments are the sole province of the Detention Center Physician." (ECF No. 13, Ex. 5, p. 3).

Evans declares that pest control and sanitation at the Detention Center is increased in warmer weather. Complaints of unsanitary shower conditions, including the presence of mold, are "met with an aggressive response from the Detention Center." (ECF No. 13, Ex. 5, p. 4). Inmates are given cleaning materials in their housing units daily. *Id.*

Evans attests that each individual committed to the custody of the Calvert County Detention Center is provided an Inmate Handbook.[8] The rules and regulations contained in the Inmate Handbook, and pertinent to this case, are summarized by Evans as follows.

> Inmate calls are limited to fifteen minutes in length. With the issuance of a telephone identification number, an inmate is permitted to make two toll-free phone calls. Telephone calls from the booking area are on a collect or debit basis. (ECF No. 13, Ex 4, pp. 2, pp. 24-25).
>
> Library books are issued weekly. Each inmate is allowed up to two books or magazines. Books are issued every Tuesday. Inmates are responsible for completing a library request slip. (ECF No. 13, Ex 4, pp. 2, p. 29).
>
> A newspaper is available in the dayroom for viewing by inmates in the housing unit. Inmates are not permitted to subscribe to any newspapers. Newspaper subscriptions arriving at the Detention Center are returned to the sender. For security reasons, including but not limited to jamming locks, concealing contraband and weapons, and causing toilets and sinks to overflow, inmates are not permitted to have newspapers in their cells. *Id.*
>
> Legal materials are available by submitting a detailed request to the Classification Coordinator. Inmates may only request information "pertaining to the case(s) that they are currently being held on or for which a detainer is pending." *Id.* The Classification Coordinator reviews the request and arranges for the requested materials. *Id.*
>
> Medical procedures require screening inmates within 24 hours of their commitment to the facility. Screening identifies an inmate's physical condition and protects others from communicable diseases. All committed inmates receive a complete physical examination within 14 days of admission. Medical, dental, and mental health matters involving clinical judgments are determined by the

---

[8] Plaintiff does not dispute that he was provided an Inmate Handbook.

5

>Detention Center Physician. "Medication, treatment or therapy is provided only as prescribed by the Detention Center Physician. Medical observation, recuperative isolation or contagious isolation is established when ordered by the Detention Center physician/PA" (ECF No. 13, Ex. 5, p. 3, 30-32).
>
>An internal complaint or grievance procedure provides inmates the opportunity to raise complaints concerning Detention Center policies. A written complaint made to the Facility Administrator must concern personal health or welfare or the operations or services of the Detention Center." (ECF NO. 14, Ex. 5, pp. 3, 34). Complaints must not include legal issues, disciplinary procedures or classification matters. *Id*.

In his affidavit, Sheriff Evans explains:

>Complaints are resolved as follows: Informally by the staff member who initially receives the complaint, with the outcome being recorded in the Post Log book, or requiring the inmate to submit an Inmate Request Form and present same to the Shift Supervisor for adjudication. The Shift Supervisor who receives the complaint must attempt to resolve the complaint and advise the inmate, in writing, by utilizing the bottom portion of the form. The complaint and the outcome must be recorded in the Supervisor's Log Book. In the event the matter remains unresolved by the Shift Supervisor, the inmate is instructed to present his/her complaint in writing to the Deputy Administrator. Within five (5) working days, the Deputy Administrator shall interview the inmate or staff deemed necessary and advise the inmate in writing of his decision. If the inmate remains dissatisfied, he/she may appeal the decision in writing to the Administrator and must do so within 48 hours of receiving the Deputy Administrator's response. The Administrator reviews the complaint within five (5) working days and submits the decision in writing or verbally informs the inmate of the outcome. Decisions made by the Administrator cannot be appealed.
>
>(ECF No. 13, Ex 5, pp. 3-4).

### C. Medical Records

Plaintiff's medical records report a history of manic depression, post-traumatic stress disorder, and a suicide attempt in 2003. (ECF No. 13, Ex. 3, p. 2). Plaintiff initially declined psychiatric treatment at the Detention Center but on May 25, 2014, decided to see medical staff because of anxiety and anger. (ECF No. 13, Ex. 3, p. 5). He was prescribed medication for depressive disorder. (ECF No. 13, Ex. 4, pp. 1-9).

**DISCUSSION**

Defendants assert they are entitled to dismissal or summary judgment based on: Plaintiff's failure to exhaust his administrative remedies; the absence of any personal participation by Sheriff Evans in the matters alleged, the absence of any constitutional violation, and qualified immunity.

Summary Judgment is governed by Fed.R.Civ.P. 56(a) which provides summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**I.     Exhaustion of Administrative Remedies**

Defendants argue Plaintiff has failed to exhaust his claims through the available administrative remedy procedure, noting that he frequently presented complaints and requests to Detention Center staff. *See supra*, p. 4.

The Prisoner Litigation Reform Act (PLRA) provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The statute requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative

process. *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003), aff'd 98 F.App'x 253 (4th Cir. 2004). Exhaustion is required even if the relief sought is not attainable through resort to the administrative remedy procedure. *Booth v. Churner*, 532 U.S. 731, 740–41 (2001). A claim which has not been exhausted may not be considered by the court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Plaintiff attests that he attempted to access the prison grievance process, but that process was flawed and somehow unavailable when he submitted complaints about the matters now under consideration. (ECF No. 1, p. 1; *see also* ECF No. 15). Defendants observe that, with the exception of the dinner roll and pest complaints, there is no record these claims were presented, much less administratively exhausted. Further, Plaintiff does not controvert his familiarity with the Detention Center's grievance process. (ECF No. 13, Ex. 2). As there appears to be a factual dispute as to whether the prison grievance system was fully available to Plaintiff, however his claims will not be dismissed on the grounds of lack of exhaustion.

## II.     Claims against Sheriff Evans

Plaintiff does not state whether his claims are brought against Evans in his personal or official capacity, but there is no basis for liability under either theory. Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person ... to the deprivation of any rights...." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S.

658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977) (in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights ...") (quoting *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D.Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

In a § 1983 action, liability of supervisory officials such as Sheriff Evans "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994).

There is no indication that Evans was directly responsible for any alleged constitutional violations. It is undisputed that Evans had no personal contact or interaction with Plaintiff. *See*

*supra* p. 4. Additionally, Plaintiff alleges no facts to hold Evans culpable under a theory of supervisory liability. Accordingly, Evans is entitled to summary judgment in his favor.

Insofar as Plaintiff brings this action against Evans in his official capacity, a local government entity can be held liable under § 1983 where it is the wrongdoer. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122 (1992).[9] It must be shown that the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Local governments can also be sued for constitutional violations pursuant to a custom, even where the custom has not been formally approved through "the body's official decisionmaking channels." *Id*. at 691. As Plaintiff does not allege Evans acted in connection with implementing a policy, ordinance, regulation, or decision by the County, or that the violation alleged was pursuant to a custom, there is no basis to find liability in this regard. Further, for reasons set forth below, Plaintiff fails to allege facts amounting to a constitutional violation.

### III. Constitutional Claims

#### A. Fourteenth Amendment Claims

Plaintiff presents the following allegations concerning his conditions of confinement: 1) he was placed on the cell floor in booking; 2) he was placed in a unit without heat during the winter; 3) there was mold in the showers and flies in the Detention Center; and 4) he was served moldy rolls at dinner. He complains he received inadequate medical care because: 1) he was not provided a medical exam for eye glasses and 2) there is inadequate screening for infectious diseases.

---

[9] As earlier noted, the State of Maryland was dismissed as a defendant. Whether a sheriff acts on behalf of the county or the state depends on the function in which he is engaged, and making the determination is a question of state law. *Dotson v. Chester*, 937 F.2d 920, 924 (4th Cir. 1991). Sheriffs generally are treated as state officials under Maryland law when engaged in traditional law enforcement functions. *See e.g. Kennedy v. Widdowson*, 804 F.Supp. 737, 742 (D.Md.1992); *Ihnken v. Garnder*, 2014 WL 4371440 (D.Md.) (April 3, 2014).

### 1. Conditions of Confinement

Claims concerning conditions of confinement imposed upon pretrial detainees are examined under the Due Process Clause of the Fourteenth Amendment as opposed to the cruel and unusual punishment prohibition of the Eighth Amendment, which applies to convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 535–38 (1979). As a pretrial detainee, Plaintiff has a due process right against restrictions that amount to punishment. *Id*. at 535. However, conditions of confinement that are imposed for, and reasonably related to, a legitimate government interest do not amount to punishment. *Id*. at 538–39. "[N]ot every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill*, 979 F.2d at 991 (citing *Bell*, 441 U.S. at 537).

To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell v. Wolfish*, 441 U.S. at 538–40). In determining whether the challenged conditions amount to punishment, it is not the province of this court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995).

The Constitution "does not mandate comfortable prisons," 452 U.S. 337, 347–49. Inmates do however have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well-being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). The Constitution does

not guarantee food will be prepared and served in a pleasing manner. *See Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994).

In order to withstand summary judgment on a challenge to prison conditions, Plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). "Only an extreme deprivation, that is, a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).

Plaintiff's complaints of placement on a cell floor during booking, a cold cell during winter, mold in the showers, bugs, expensive phone calls, and a single instance of moldy dinner rolls, may demonstrate discomfort and disagreeable conditions, but do not support claims of constitutional magnitude. First, none of the matters is claimed to have been imposed with an expressed intent to punish Plaintiff. Second, there is no showing that he was at risk of or in fact sustained a serious or significant physical or emotion injury as a result of the conditions. Plaintiff's allegation that he ached from the cold temperature in his cell is made without demonstration of serious or significant resultant injury.[10] Plaintiff's concerns of mold in showers and bugs in the facility are regularly addressed by prison sanitation and pest control efforts, and resulted in no harm. Clearly, a single instance of moldy bread and going to bed that night hungry does not substantiate a constitutional claim.

### 2. Medical Treatment

Pretrial detainees are also entitled to medical treatment, "and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."

---

[10] It is undisputed that blankets were provided to the inmates.

*Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (citing *Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978)); *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (pretrial detainee Fourteenth Amendment claims of inadequate medical care governed by same standard—deliberate indifference to serious medical needs—as Eighth Amendment claims of convicted prisoners).

Deliberate indifference to a serious medical need requires objective proof that the plaintiff was suffering from a serious medical need and that the prison staff members were subjectively aware of the need for medical attention but failed to provide it. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference," *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995), because, to be liable, a person must "consciously disregard a substantial risk of serious harm," *Farmer* 511 U.S. at 839.

Plaintiff next complains he was not provided a medical exam for eye glasses and there is inadequate screening for infectious diseases. Plaintiff does not dispute, however, that medical decisions concerning inmates at the Detention Center are the "sole province of the Detention Center Physician." *Supra*, p. 4. As a nonmedical correctional supervisor, Evans was entitled to rely on the medical judgment and expertise of prison physicians and medical staff concerning the

course of treatment necessary for inmates. *See Shakka v. Smith,* 71 F.3d 162, 167 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (stating supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with an inmate's medical treatment ordered by such personnel). Moreover, Plaintiff does not allege suffering injury or contagion as a result of the purportedly inadequate medical care provided. For these reasons, Plaintiff's conditions of confinement and inadequate medical care claims are unavailing, and Defendants are entitled to summary judgment in their favor.

    **B.**    **First Amendment Claims**

Plaintiff complains he was denied access to a "proper legal standing library," was unable to order books or newspapers, and the cost to make phone calls from the Detention Center was excessive.

    **1.**    **Access to the Courts**

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Harris*, 430 U.S. 817, 821 (1977). The right of access to the courts, however, is the right to bring to court a grievance, and violation of that right occurs only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). To present a claim denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) quoting *Lewis*, 518 U.S. at 355. "The requirement

that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id*. at 349. Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55.

Plaintiff provides no facts or evidence to demonstrate he suffered any actual injury as a result of the law library's alleged deficiencies. He does not indicate what legal materials he needed or why his inability to access them during confinement prevented him from preparing an effective defense, or caused him to miss any deadline.[11] Plaintiff's record shows that he made several inquiries for legal materials and each was answered by Detention Center Staff.[12] Simply put, Plaintiff's bare allegation of an improper law library fails to state a claim of constitutional dimension, and summary judgment in favor of Defendants is appropriate.

### 2. Newspaper Subscriptions

The Constitution allows greater restriction of First Amendment rights in a prison setting. *See Beard v. Banks*, 548 U.S. 521, 528 (2006), *Turner v. Safely*, 482 U.S. 78, 84–85 (1987); and *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). ("Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). Courts accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of

---

[11] Plaintiff was represented by counsel during his criminal proceedings. *See* http://casesearch.courts. state.md.us/inquiry/inquiryDetail.jis?caseId=04K13000563&loc=63&detailLoc=K.

[12] Plaintiff's requests included 1) a Maryland Criminal Law and Motor Vehicle Handbook), 2) the addresses of various state officials, *Id*. at 47; 3) the "Maryland Criminal Law Handbook" on CD Rom; 4) assistance in obtaining a copy of a speeding ticket issued to him; 5) a copy of the "federal sentencing guideline revocation table"; 6) the "law book dealing with the 'statue' " [sic]. (ECF No. 13, Ex. 2).

a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132; *Pell v. Procunier,* 417 U.S. 817, 826–27(1974).

In this case, Defendants explain newspaper subscriptions are not permitted in the Detention Center because newspaper may pose safety and security hazards. Detainees have access to a daily newspaper in their unit dayroom. Newspapers are limited due to concerns they may be used to hide contraband or plug toilets and sinks. There is a clear connection between this restriction and the legitimate governmental interests of institutional safety and security. Moreover, the facility has provided alternative means of accessing newspapers. Magazines and books are also available through the Detention Center library.[13] For these reasons, Defendants are entitled to summary judgment in their favor as to this claim as a matter of law.

### 3. Phone Calls

There is no constitutional right to reasonably priced telephone calls when in detention. Plaintiff does not identify any injury sustained due to purportedly excessively priced telephone calls. As noted, the Detention Center provides two toll-free phone calls, by debit card and on a collect-call basis. *See supra* p. 5. These allegations do not support a claim of constitutional magnitude, and summary judgment in favor of Defendants will be entered as to this claim

### CONCLUSION

For the foregoing reasons, the court will grant Summary Judgment in favor of Defendants. A separate Order follows.

Date:   December 10, 2014                                 /s/
                                                         DEBORAH K. CHASANOW
                                                         United States District Judge

---

[13]   The Due Process Clause of the Fourteenth Amendment prohibits a deprivation of property without due process of law. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Plaintiff, however, provides no grounds to show a state created liberty interest in newspapers, magazines, or other published materials, and cannot state a due process violation in this case.